IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| JOSEPH DiNICOLA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-6317-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SERVICE EMPLOYEES INTERNATIONAL | ) | |
| UNION, LOCAL 503; et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

INTRODUCTION

Defendants move to dismiss plaintiff's First Amended Complaint.  [#61; #63].

## 1.  **Procedural Background:**

Plaintiff filed his complaint on October 14, 2008.  [#1]. Local 503 and individual defendants, and SEIU, filed motions to dismiss. [#18; #28].  The State of Oregon filed a motion for

ORDER - p.1

judgment on the pleadings.  [#30].  On June 12, 2009, this court
dismissed plaintiff's claims and allowed plaintiff 21 days to
file an amended complaint that was not to include a claim for
overtime compensation or any claim against the State of Oregon.
[#56].

Plaintiff filed a 54-page amended complaint on July 6, 2009.
[#57].  Defendants Service Employees International Union Local
503 (Local 503), Oregon Public Employees Union (OPEU), Marc
Stefan (counsel for Local 503), Leslie Frane ( SEIU Vic president
serving on the Executive Board), Robert Gourley (Local 503
Retirees Local 001 Secretary Treasurer), Sonya Reichwein (Local
503 statewide vice president and Local 503 Board member), Star
Holmberg (Local 503 Board member), Kathie Best (Local 503
statewide immediate past president and a Local 503 Board member
and Executive Committee member), Dawn Morgan (Local 503 retirees
Local 001 Vice president and Local 503 alternate board member),
Deborra Low (Local 503 member and general council delegate),
Barbara Casey (Local 503 member and general council delegate),
James Jacobsen (Local 503 Board member and general council
delegate), Farrell Hopkins (Local 503 Board member and Executive
Committee member), Catherine Stearns (Local 503 Board member and
Local 503 Steward), Gina Santacroce (Local 503 Board member),
Linda Burgin (Local 503 Board and Executive Committee member),
and John Hawkins (Local 503 Retirees 001 President and a local

ORDER - p.2

503 Board member), filed a joint motion to dismiss on August 28,
2009. [#61] The Service Employees International Union (SEIU),
moved to dismiss plaintiff's amended complainton August 31, 2009.
[#63].

On September 9, 2010, a Notice of Chapter 7 Bankruptcy and
Automatic Stay was filed by defendant James Jacobsen and the case
was stayed until March 9, 2011, when the court was informed that
the stay had been lifted. [#100; #104].

## 2.   **Factual Background:**

The Oregon Department of Revenue (ODR) has employed
plaintiff continuously since hiring him as a tax auditor in 1987.
[#57-p.3, ¶6; #62-Ex.A, p.1; #84-pp.1-2, ¶1]. The ODR released
plaintiff to serve as the elected president of defendant Local
503. [#19-p.2, App.A,p.1; #57-p.4, ¶9]. Plaintiff served as the
Local 503 president from November 2004, until November 2008.
[#19-p.2; #57-p.4, ¶10]. SEIU is a parent organization to Local
503 and other affiliated union organizations. [#57-p.8, ¶14].
In accord with a written agreement between ODR and Local 503,
Local 503 reimbursed ODR for the wages, benefits, paid leave
time, pension and other expenses[1] that ODR paid plaintiff. [#57-
p.4, ¶9; #62-Ex.A, p.2, ¶2; #84-p.2, ¶2]. Local 503 also paid
plaintiff an additional $400 per month during both terms he

---

[1]     Plaintiff's complaint alleges that the agreement included language
that said "[a]ll overtime, compensatory time and travel expenses would be
reimbursed by Local 503" to ODR. [#57-p.14, ¶33].

served as president. [#57-p.4, ¶9; #62-Ex.A, p.2, ¶2; #84-p.2, ¶3].

In December 2004, plaintiff explained to Ms. Frane, the Executive Director of Local 503, that because ODR had assigned him to "work out of class", he was paid a 5% salary differential ($257.37), until September 2005, and asked that Local 503 include that amount ($257.37)[2], in his compensation package. [#62-Ex.A, pp.2-3, ¶¶ 3-4; #84-pp.2-3, ¶¶4-6]. On January 8, 2005, the Local 503 Board of Directors authorized payment of plaintiff's requested differential to continue until September 2005. [#62-Ex.A, p.3, ¶4, and Att.1; #84-p.3, ¶6].

In February 2007, plaintiff told defendant Local 503 Executive Director Leslie Frane that he intended to submit an overtime claim and asked her to sign his time sheets documenting the overtime. [#57-p.16,¶35]. She declined to sign plaintiff's revised timesheets pending consultation with defendant Local 503 attorney Marc Stefan, and the Local 503 board. *Id.*

In March 2007, Local 503 directors hired an outside law firm to evaluate plaintiff's claim that he was entitled to overtime pay for working over 40 hours a week as union president. [#62-Ex.A, p.3, ¶5; #84-p.3, ¶¶7-8]. While reviewing plaintiff's

---

[2]     Plaintiff's federal complaint characterizes the $257.37 as (along with the $400), part of his "president's pay" however, plaintiff's brief appealing the state court decision states that he received "$257 per month adjustment to replace differential wage payments due Plaintiff." [#57-p.4, ¶9; #62-Ex.B,p.4].].

compensation record, Mark Stefan, (outside counsel for Local 503), learned that plaintiff was still receiving the $257.37 differential. *Id.*

At a April 14, 2007, meeting directors were informed of Mr. Stefan's discovery prompting a motion to continue the differential which died for lack of a second. [#62-Ex.A, p.4, ¶6; #84-p.3, ¶9]. Following that meeting, on April 17, 2007, Ms. Frane informed Mr. Stefan that she had directed the finance department to immediately stop paying plaintiff the $257.37 monthly differential[3]. [#62-Ex.A, p.4]. On April 27, 2007, the ODR denied plaintiff's request for comp time and/or overtime. [#57-p.16, ¶36].

In May 2007, plaintiff met with Ms. Dale (who is not a defendant), in her capacity as SEIU Vice President to inform her that he was suffering personal attacks because of his wage claim and asked her to direct Ms. Frane to stop these attacks. [#57-pp.16-17, ¶37]. On May 8, 2007, plaintiff filed a complaint in the Circuit Court of the State of Oregon for the County of Marion, alleging violations of the Fair Labor Standards Act (FLSA), Oregon state wage and hour laws and Oregon contract law seeking to recover approximately $110,000 in damages. [#19-App.A, p.1; #57-p.17, ¶38].

---

[3]    Local 503 never took any action to recoup the approximately 19 months of unauthorized payments from plaintiff - a total of almost $5000. [#62-Ex.A-p.4, ¶8; #84-p.4, ¶12].

In a letter opinion dated February 21, 2008, [4] the Hon. Albin W. Norblad held, *inter alia*, that plaintiff's position as Local 503 President was exempt from the FLSA's overtime pay requirements and denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment. [#19-App.A].

### DISCUSSION

Plaintiff's First Amended Complaint (FAC) asserts ten claims against defendants. [#57].Defendants move to dismiss plaintiff's FAC with prejudice and for summary judgment on plaintiff's allegation that he was deprived of a $257 per month payment in retaliation for filing his overtime claim. [#61; #63].

### 1.   Motion to Dismiss Standard:

To survive a motion to dismiss, a complaint must contain sufficient facts which when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

Facts pleaded that are "merely consistent with" a defendant's liability, are insufficient to meet the requirement

---

[4]      The Order of General Dismissal was entered on March 27, 2008. [#19-App.A, pp.9-10]. This complaint was filed on October 14, 2008 -6 months, 17 days later.

ORDER - p.6

of a plausible entitlement to relief. *Id.* at 557. The court
need not accept as true, allegations contained in a complaint
that are simply legal conclusions. *Ashcroft v. Iqbal,* __ U.S.
__, 129 S.Ct. 1937, 1949 (2009). Similarly, threadbare recitals
of the elements of a cause of action supported by conclusory
statements, are insufficient to maintain a claim. *Id.*

Determining whether a complaint states a plausible claim for
relief is a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense.
*Iqbal,* 129 S.Ct. at 1950. Where the facts as pleaded do not
permit the court to infer more than the mere possibility of
misconduct, then the complaint has alleged, but not shown, "that
the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

## 2. Claims 1 and 2 - FLSA/ORS 652.355 claims against Local 503 and SEIU:

Plaintiff renews his allegations of retaliation and
discrimination by the SEIU and Local 503 based on his pursuit of
overtime compensation and adds assertions that the SEIU and Local
503 officers and members about whom he complains, were acting as
agents for his employer, Local 503. [#57-pp.44-45].

Section 215(a)(3) of Title 29, United States Code, makes it
unlawful for any person to:

"discharge or in any other manner discriminate against
any employee because such employee has filed any
complaint or instituted or caused to be instituted any
proceeding under or related to [the FLSA] . . . ."

29 U.S.C. §215(a)(3).

Because FLSA is a remedial statute, it "must not be interpreted or applied in a narrow grudging manner." *Tenn. Coal, Iron and R.R. Co. V. Muscoda Local No.123,* 321 U.S. 590, 597 (1944). Rather, the statute must be "interpreted broadly" to effectuate its underlying purposes. *Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1151 (9th Cir. 2000). The statute's anti-retaliation provision is designed to encourage employees to report alleged violations of FLSA's substantive provisions without fear of reprisal. *Lambert v. Ackerley,* 180 F.3d 997 1004, 1008 (9th Cir 1999).

FLSA's anti-retaliation provision, in relevant part, prohibits an employer from discharging an employee because the employee "caused to be instituted any proceeding" related to the assertion of wage rights or who has "filed any complaint", "has testified" or "is about to testify" regarding wage rights. 29 U.S.C §215(a)(3)   The language in ORS 652.355(1) is almost identical to that of FLSA's anti-retaliation provision therefore, its provisions will be treated as the same for purposes of this motion.

To make a *prima facie* showing of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) defendants took an adverse action against him; and (3) there was a causal link between his involvement in the protected activity

ORDER - p.8

and the adverse personnel action undertaken by the defendants.
*Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). An adverse
employment action is one that a reasonable employee would find to
be materially adverse, or which would dissuade a reasonable
worker from engaging in a protected activity. *Burlington N. &
Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006). The *McDonnell
Douglas* framework applies to plaintiff's retaliation claims.
*McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1124 (9th Cir.
2004).

Plaintiff alleges that the individual defendants, Local 503
members and officers, and their attorney made statements, and/or
sent e-mails or letters disparaging him, embarrassing him,
attempting to coerce him and threatening him, all in retaliation
for his overtime claims. [#57-pp.6-44]. Some of the alleged
statements were no confidence votes during an unsuccessful effort
to recall plaintiff from the Local 503 presidency; and some were
letters from other local union presidents asking plaintiff not to
attend the other locals' meetings until his overtime claims are
resolved.

However, some were not as benign. One (from Ms. Morgan to
Ms. Frane), suggested using a threat of public exposure or
embarrassment to "blackmail" plaintiff into withdrawing his
overtime request. [#57-pp.20-21, ¶44]. Another was an email
campaign by Mr. Gourley which alluded to a threat of grisly

ORDER - p.9

physical violence against plaintiff and another spoke about Mr. Gourley following plaintiff to his home to "see the house he [Gourley] would own". [#57-pp 18, 29-30]. Yet another from a union steward to Ms. Frane included a link to a non-union website post of a privileged memorandum discussing plaintiff's wage claim. [#57-p.24, ¶50].

Plaintiff alleges that he complained about these communications to Local 503 directors (Ms. Frane and others), only to be told by Ms. Frane that she did not have the ability to censor union members expressing their opinions about union leadership. [#57-p.32, ¶¶ 64-65]. She did agree to remind people that they should not be advocating or opposing plaintiff's recall while at work. *Id.* Plaintiff alleges that unlike his complaints, others' complaints about Mr. Gourley's inappropriate use of email had resulted in Mr. Gourley being instructed to stop or be removed from the list serve. [#57-p.32, ¶65].

Defendant Local 503 and its named members and officers argue that, despite plaintiff's efforts to characterize the overtime as an issue between him and the ODR, the individuals' actions were simply expressing their own perception that because their dues would pay for plaintiff's overtime compensation, plaintiff was attempting to enrich himself at the expense of those he was elected to represent and that as union president, plaintiff was not entitled to overtime compensation. [#19-pp.3-4].

ORDER - p.10

I find that the Local 503 members and officers' overt
attempts to prevent plaintiff from making his overtime claim are
actions that *would* likely dissuade a reasonable worker from
engaging in a protected activity - making an overtime claim.

On the other hand, defendant SEIU argues that plaintiff's
allegations fail to bolster his bare legal conclusion that SEIU
is vicariously liable for the actions of Local 503 or its
officers and members. SEIU correctly contends that without
evidence that it instigated, supported, ratified or encouraged
the Local's (or the Local's members' or Board's) activities or
that the Local acted pursuant to its agreement with the
International, there is no agency relationship as a matter of
law. *Moore v Local Union 569 of Intern. Broth. Of Elec. Workers,*
989 F.2d 1534, 1543 (9th Cir. 1993).

Plaintiff's attempt to tie SEIU to the Local's activities
through Ms. Frane's position as one of 21 SEIU Vice presidents
[#57-p.9, ¶17], is unavailing. Courts analyzing the actions of
an individual who serves simultaneously as a local and an
international official look to the organization being served at
the time of the allegedly objectionable conduct. *Laughton v.
Ontern. Alliance of Theatrical Stage Employees,* 248 F.3d 931, 937
(9th Cir. 2001). They do not impute the conduct, or knowledge of
the conduct, to the international solely by virtue of the
individual's double role.

ORDER - p.11

Similarly, plaintiff's allegations about SEIU's legal advice to their Local about plaintiff's overtime grievance [#57-pp.21-22, ¶¶45-48], and Ms. Dale's suggested failure to act {#57-p.16, ¶37], do not demonstrate the requisite plausibility of SEIU's instigation, support or ratification of the Local's allegedly retaliatory actions.

The complaint contains only the most conclusory allegation that SEIU is plaintiff's employer, and when read with the other allegations, that conclusion is not plausible. The complaint alleges that plaintiff worked at ODR since 1987, was released for assignment to Local 503 and was paid by ODR, which was reimbursed by Local 503. There are no allegations that plaintiff performed duties for or received compensation from SEIU, or that SEIU enjoyed the right to control plaintiff's work.

For these reasons, viewing plaintiff's allegations in the light most favorable to him, I find that while they are sufficient to state a plausible retaliation claim against Local 503, they are insufficient to state a claim against the SEIU. I therefore dismiss claims one and two against SEIU.

**3.  Claim three: IIED against all defendants except SEIU:**

Oregon law provides that a claim for IIED requires the plaintiff to show that: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress,

ORDER - p.12

and (3) the defendant's acts constituted an extraordinary
transgression of the bounds of socially tolerable conduct."
*McGanty v. Straudenraus*, 321 Or 532 (1995).

In order to hold Local 503 liable under this theory, its
employees' conduct must have occurred within the course and scope
of employment. That inquiry involves the following elements:
(1) whether the act occurred substantially within the time and
space limits authorized by the employment; (2) whether the
employee was motivated, at least partially, by a purpose to serve
the employer; and (3) whether the act is of a kind which the
employee was hired to perform. *Chesterman v, Barmon,* 305 Or 439,
442 (1988). Determining whether a complaint sufficiently alleges
conduct that constituted an extraordinary transgression of the
bounds of socially tolerable conduct is a question of law.
*Babick v. Or Arena Corp., 160 Or.App. 140, 150 (1999), rev'd in
part on other grounds,* 333 Or. 401,(2002).

Plaintiff's allegations of unjustified criticism of his
overtime claims are plainly insufficient given that it is well
established that excessive supervision and unjustified
reprimands, even if proved, cannot amount to an extraordinary
transgression of the bounds of socially tolerable conduct.
*Snyder v. Sunshine Dairy,* 87 Or.App. 215, 218 (1987). Grisly as
Mr. Gourley's comments were, they are not sufficiently egregious
behavior to state a claim for IIED in Oregon. *Lewis v. Oregon*

ORDER - p.13

*Beauty Supply Co.,* 302 Or. 616 (1987)(owner's son supervising
employee repeatedly harassed her, called her a whore, swore at
her at work, and told other employees she had given him a
venereal disease, insufficient to state a claim for IIED against
supervisor or owner).

Plaintiff's third claim for IIED is therefore dismissed.

## 4. Claim four: Reckless Infliction of Emotional Distress against all defendants except SEIU:

Under Oregon law, there is no cognizable claim for reckless
infliction of emotional distress. *Snead v. Metropolitan property
and Cas. Co., 909 F.Supp. 775, 779 (9th Cir 1996).* Additionally,
plaintiff has failed to plead facts sufficient to constitute an
extraordinary transgression of the bounds of socially tolerable
conduct.

Plaintiff's fourth claim for reckless infliction of
emotional distress is therefore dismissed.

## 5. Fifth Claim Intentional Interference with Economic Relations against all defendants:

Plaintiff's first paragraph states "Local 503 and SEIU have
an employment relationship with Plaintiff." [#57-p.47,¶96]. The
State Court agreed that Local 503 was plaintiff's employer
finding that plaintiff performed his duties as president on
behalf of the union and its members according to the union's
governing documents, policies and procedures. [#19-App.A, p.5].

The elements of intentional interference with economic

relations (IIER) are: "(1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage); (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages." *Allen v. Hall,* 328 or. 276, 281 (1999). Plaintiff's IIER claims against Local 503 and SIEU as elucidated in the pleadings (and the state court opinion), fail because Local 503 and SEIU cannot be a third party to plaintiff's relationship with them.

Plaintiff also alleges that the individually named defendants tortiously interfered with his relationship with his employer by *inter alia* causing him to be denied compensation. [#57-pp.47-48, ¶¶ 96-99]. However, the record before the court, demonstrates that plaintiff as an exempt employee was not entitled to overtime and additionally was not entitled to the additional $257.37 monthly differential payment past September 2005. Plaintiff therefore fails to substantiate any harm[5] to the relationship with his employer resulting from the named defendants' actions.

Plaintiff's fifth claim for intentional interference with

---

5    In fact, plaintiff received almost $5000 in addition to the agreed upon compensation that his employer was required to pay him.

economic relations is therefore dismissed.

## 6.   Sixth Claim: Violation of Oregon Whistleblower Laws against Local 503 and SEIU:

Plaintiff generally alleges that the union defendants retaliated against him for bringing his civil proceedings and for testifying in these proceedings.   [#57-p.49, ¶¶100-101].   A claim under the Oregon Whistleblower laws, requires a plaintiff to show that: (1) he engaged in protected activity; (2) suffered an adverse employment decision; and (3) suffered the adverse employment decision because he engaged in the protected activity. *Minter v. Multnomah County,* 2002 WL 31496404 at *6 (D.Or. 2002)(applying standards for Title VII retaliation claim to claims under Oregon Whistleblower Act).

Because plaintiff has not identified any adverse employment decision made by Local 503 or SEIU as a result of plaintiff's overtime claim or his testimony at the administrative hearings, his claim fails to state a Whistleblower claim.   Plaintiff's sixth claim for violation of the Oregon Whistleblower laws is therefore dismissed.

## 7.   Seventh Claim against all defendants for Violation of ORS 659A.030(1)(g):

It is an unlawful employment practice for an employer or employee "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under ORS [Chapter 659A] or to attempt do so."   ORS 659A.030(1)(g).   Plaintiff alleges that all defendants

ORDER - p.16

"aided, abetted, incited, compelled and coerced the
discriminatory and retaliatory acts alleged". [#57-p. 49, ¶103].

Local 503 and individual defendants argue that as
corroborated by Judge Norblad's decision, Local 503 not ODR, was
plaintiff's employer. Defendants assert that, Local 503 could
not aid and abet itself, the statute does not capture non-
employee defendants, and defendants Best, Frane and Stefan merely
opposed plaintiff' claim, which does not amount to
discrimination.

Plaintiff responds that Local 503 misreads the claim, and
alleges that Local 503 aided and abetted the discrimination
perpetrated by individual defendants, the acts of the individual
defendants are the acts Local 503 because the individual
defendants are its agents, and Best, Frane and Stefan are liable
for their own discrimination and for failing to prevent
discrimination by others that they witnessed.

However, without a violation of Chapter 659A  Whistleblower
laws, this claim fails.  Plaintiff's seventh claim for violation
of ORS 659A.030(1)(g) is therefore dismissed.

## 8.   Eighth Claim against Local 503 and SEIU for violation of 29 U.S.C. §411 (LMRDA):

The Labor Management Reporting Disclosure Act (LMRDA)
provides that members of labor organizations have freedom of
speech and assembly rights, and that no labor organization shall
limit the right of any member to institute an action or appear as

a witness. 29 U.S.C. § 411(a)(2) and (4). Plaintiff alleges
that Local 503 and SEIU violated the LMRDA provisions that
prohibit a labor organization from limiting the right of any
member to institute an action in court or testifying as a witness
in a judicial or administrative proceeding. [#57-p.50,¶¶105-
106].

Local 503 argues that the complaint does not allege that
Local 503 actually deprived plaintiff of protected rights, and
the statute does not provide a cause of action for *attempts* to
deprive plaintiff of protected rights. [#19-p.12]. Local 503
further argues that because plaintiff alleges no actual damages,
his term as president has expired and he is no longer employed by
the union, there is no appropriate relief available. *Id.*

"If a union member's right to sue is to have any meaning,
courts must be ever vigilant in protecting the right against
indirect and subtle devices as well as against direct and obvious
limitations." *Phillips v. Int'l Ass'n of Bridge, Structural and
Ornamental Iron Workers, Local 118*, 556 F.2d 939, 942 (9th Cir.
1977). Plaintiff need not allege that Local 503 *actually*
deprived him of the ability to file suit or attend meetings.

Accepting as true the allegations of the complaint, the
conduct of Local 503 acting through its officers, was designed to
dissuade plaintiff from making an overtime claim. Thus, at this
stage of the proceeding, Local 503's actions could plausibly be

ORDER - p.18

considered retaliatory. However, plaintiff's claims against SEIU lack such plausibility and are dismissed.

**9.    Ninth Claim: Negligence against Local 503 and SEIU:**

Plaintiff alleges that Local 503 and SEIU have a duty to protect plaintiff from retaliation from other employees and members and failed to take reasonable action to prevent their resources from being used in a campaign of retaliation against plaintiff.  [#57-pp.50-51, ¶107].

Local 503 and the individual defendants argue that this claim essentially alleges negligent infliction of emotional distress, and so fails just as plaintiffs' claims for IIED and RIED did.  [#19-pp.56-58].  Local 503 and individual defendants further argue that: Oregon's rules for recovery for emotional harm in the absence of physical injury are not satisfied; and the negligence claim is preempted by the LMRDA protection of the members' right to voice their opinions, so that Local 503 had no power to restrain its members in the exercise of rights. Finally, Local 503 argues that plaintiff does not contend that its conduct infringed his rights but rather that the union failed to prevent others from causing him emotional distress.

Because there is no liability in ordinary negligence in Oregon without actual physical harm, it would seem to follow that there was no liability for negligent infliction of emotional distress if the person is not also physically injured, threatened

ORDER - p.19

with physical injury, or physically impacted by the tortious
conduct. *Hammond v. Central Lane Communications Ctr*, 312 Or. 17,
22-23(1991)(describing liability for emotional distress caused
intentionally or by violation of heightened duty of care).

Oregon courts have fashioned some exceptions to this rule;
one of which is that recovery may occur if "the defendant's
conduct infringed on some legally protected interest apart from
causing the claimed distress. *Hammond,* 312 Or. at 22-23.
The term 'legally protected interest' refers to an independent
basis of liability separate from the general duty to avoid
foreseeable risk of harm, and the identification of this distinct
source of duty is an indispensable condition of liability for
emotional distress damages in which there is no physical injury.
*Curtis v. MRI Imaging Services II*, 148 Or.App. 607, 618 (1997).
However, emotional distress damages cannot arise from
infringement of every legally protected interest, but only those
of "sufficient importance as a matter of public policy" merit
protection from emotional impact. *Hilt v. Bernstein,* 75 Or.App.
502, 515 (1985), *rev. den.* 300 Or. 545 (1986).

Plaintiff argues that because defendants infringed his right
to sue and his right to freedom of assembly under LMRDA, his
right to be free from retaliation under FLSA and state laws he
has stated a claim. At this stage of litigation, I agree that
his FLSA claim survives but, only against Local 503.

ORDER - p.20

**10.  Tenth Claim: Defamation against all defendants:**

Plaintiff contends that defendants have defamed him by publishing false statements to union members alleging that plaintiff had violated state and federal laws, have publically called him a "sleazy grafter", a "pickpocket", and called him "Local 503's own Jimmy Hoffa" all of which injured his professional reputation and caused him severe emotional distress and physical illness. [#57-pp.51-53, ¶¶ 108-116].

Defendants argue that these were not literal statements nor could they be taken as literally true and are further they are taken out of context. [#116-p.29]. Defendants also contend that the names plaintiff was called were not defamatory because they were simply expressions of opinion. *Id.*

To establish a *prima facie* defamation claim, a plaintiff must present evidence sufficient to show that the defendant published a defamatory statement about the plaintiff to a third person. *Hutchinson v. Menlo Logistics, Inc.,* 2006 WL 44196 at *4 (D.Or.2006). A defamatory statement is one that would subject another to "hatred, contempt, or ridicule ... [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Affolter v. Baugh Construction Oregon, Inc.,* 183 Or.App. 198, 202-203 (2002).

ORDER - p.21

Generally, statements that impute an inability to perform one's official or employment duties, or prejudice a plaintiff in his profession are considered defamatory *per se*. *Cook v. Safeway Stores, Inc.,* 266 Or. 77, 82 (1973). At this juncture, plaintiff articulates a sufficiently plausible entitlement to relief.

CONCLUSION

Based on the foregoing reasoning, defendant Local 503 and individual defendants' motion to dismiss [#61] and SEIU's motion to dismiss [#63] is GRANTED in part and DENIED in part as follows:

GRANTED for: all claims against Mr. Stefan; claims one through eight against SIEU; claims three, four, five, six and seven against all defendants

DENIED for: claims one, two and eight against Local 503 and all individual defendants (except Mr. Stefan); and claims nine and ten against all defendants (except Mr. Stefan).

IT IS SO ORDERED
DATED this 5th day of August, 2011

UNITED STATES DISTRICT JUDGE