UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JOSEPH DiNICOLA,

Plaintiff,

v.

SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503, et al.,

Defendants.

6:08-cv-6317-TC

ORDER

COFFIN, Magistrate Judge:

Before the court is plaintiff's fee petition in which he seeks $249,980. Defendants understandably object.

The procedural history of this case has unfortunately been complicated by plaintiff's counsel's penchant for proliferating claims, some of which lack a viable basis, which named numerous defendants. Plaintiff initially asserted nine claims for relief arising from his failed attempt to seek overtime pay for his exempt union position and the alleged resulting retaliation against him in a complaint filed on October 14, 2008. The inclusion of questionable claims in the complaint necessarily resulted in substantial and lengthy motions practice to narrow the complaint to more viable claims.

In addition to naming the State of Oregon and the parent organization of his union, plaintiff sued the local union and 15 individual defendants. On June 12, 2009, the court dismissed the initial complaint against all parties on all claims, but allowed plaintiff leave to replead. Plaintiff filed an amended complaint on July 6, 2009, again asserting 10 claims for relief. On August 5, 2011, the court dismissed all but five claims. The only claim that survived against the individual defendants was a claim for defamation.[1] Plaintiff filed a second amended complaint on September 5, 2012 and an amended second amended complaint on October 1, 2012.

Very little in the way of discovery took place in this case and on April 25, 2013, nearly five years after the initial complaint was filed, plaintiff filed an acceptance of an offer of judgment from defendants Service Employees International Union Local 503 (Local 503) and the individual defendants. The offer plaintiff accepted was for a total sum of $20,000 (despite plaintiff's prayer for $1,000,000 plus punitive damages) which averages out to be $1,250 per defendant. The court has recommended that plaintiff's remaining state law claim against defendant Service Employees International Union (SEIU) be dismissed[2] and plaintiff now seeks attorney fees related to the judgment received from Local 503 and the individual defendants for fees and costs incurred up to March 27, 2013.

---

[1]The operative complaint also included claims for violations of the Fair Labor Standards Act, the Labor Management Reporting Disclosure Act, and ORS § 652.355 as well as a negligence claim against Local 503.

[2]Included in my F&R was the observation that the court should, among other reasons for dismissal, exercise its discretion to decline jurisdiction over the sole remaining state law claim because (despite the passage of five years and three amendments to the original complaint) the operative complaint still fails to articulate a viable defamation claim against SEIU.

A. Attorneys' Fees

Plaintiff, as the party seeking fees, has the burden of showing that time spent by his attorney was reasonably necessary. Gates v. Deukmajian, 987 F.2d 1392, 1397 (9th Cir. 1992); Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989). In order to support a finding of reasonableness, plaintiff must document the hours spent in the litigation and provide evidence supporting those hours. Gates, 987 F.2d at 1397. Defendants, as the parties opposing the fees, must then rebut plaintiff's evidence by "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in [his] submitted affidavits." Id. at 1397-98.

In determining the reasonableness of fees, the court is not required to respond to each specific objection. Id. at 1400. Rather, all that is required is a "concise but clear" explanation of reasons for the fee award. Id.

Calculating a "reasonable attorney's fee" involves a two pronged approach. A court must first calculate a lodestar figure by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543 (1984). This lodestar figure is presumed to represent an appropriate fee. Under certain circumstances, however, a court may adjust the award upward or downward to take into account the Kerr factors not subsumed within the initial lodestar calculation. Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988).[3]

---

[3]The Kerr factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6)

Reasonable hourly rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to plaintiff's counsel of record. Blum, 465 U.S. at 897. Blum, instructs courts to look at the prevailing rates in the relevant market. Id. at 895, n. 11. Plaintiff's counsel, Salem, Oregon attorney Kevin Lafky and other members of his Salem firm, seek hourly rates ranging from $500 for attorney Kevin Lafky to $250 for the other 11 attorney in the firm who worked on the case. Plaintiff also seeks $125 per hour for work done by paralegals and $75 per hour for work done by law clerks and legal assistants. Defendants object and assert that hourly rates for the attorneys exceed reasonable rates for counsel in the area.

The court agrees that the hourly rates requested do not comport with the prevailing market rates in the relevant community which is the upper Willamette Valley of Oregon. According to the 2012 Oregon State Bar survey, the average hourly rates for attorneys with experience comparable to plaintiff's attorneys in this case are:

Kevin Lafky - 21-30 years of experience = $225

Jon Weiner - 7 - 9 at the time services were performed = $208

Larry Linder - 7 - 9 at the time services were performed = $208

Haley Percell -4-6 years at the time services were performed = $183

Eric Wilson - 4 - 6 years at the time services were performed = $183

---

whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir 1975). Among the many subsumed factors in the lodestar calculation are the novelty and complexity of the issues involved, the special skill and experience of counsel, and the results obtained. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988).

R. Grant Cook - 7-9 years at the time services were performed = $208

James Davis - 7-9 years at the time services were performed = $208r

Leslie Howell - 4 -6 years at the time services were performed $183

Tonyia Brady - 0- 3 years at the time services were performed = $150

Matt Mohill - 0-3 years at the time services were performed = $150

Tara Costanza - 0-3 years at the time services were performed = $150

Lynn Steyaert - 7-9 years at the time services were performed = $208

Based on these hourly rates, plaintiff's fee request is reduced by $97,088 for the hours submitted by counsel.[4]

The fee claimant must next demonstrate that the number of hours spent was reasonable and that counsel made a good faith effort to exclude excessive, redundant, or unnecessary hours. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Plaintiff primarily defends the exorbitant fee request by asserting that this was a very complex civil rights case. But his assertion begs the question, did plaintiff's counsel take on a complex civil rights case, or did counsel transform what is essentially a routine defamation case into a "complex civil rights case?" Counsel's strategy to throw multiple claims against the wall to see what sticks, though time intensive for both sides to this litigation, was not a reasonable expenditure of attorney time. While the court declines to accept defendants' invitation to simply sidestep the lodestar and award between $5-$10,000 or at least no more than $20,000 based on the results obtained,[5] the court does agree that the lodestar approach should result

---

[4]The court was unable to find any hours billed by attorney R. Grant Cook.

[5]Although I agree that no rational client would expend $249,980 of his own funds to collect $20,000 at the end of the road, fee shifting statutes can create precisely this sort of anomaly.

in a substantial reduction as noted below.

Defendant objects to time spent on unsuccessful state court overtime litigation, state court retaliation litigation, an unsuccessful motion for a temporary restraining order and attempts to get the Secretary of State to intervene, the BOLI complaint, clerical tasks, and the fee petition. Defendant also objects to a specific entry for 1.3 hours of work for "Conference with client re ongoing deposition scheduling."

1. State Court Overtime Litigation

A fee award should include every item of service, including service in other proceedings, which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest. Hasbrouck v. Texaco, Inc., 879 F.2d 632, 638 (9th Cir. 1989). Plaintiff suggests his efforts in the state court overtime case was a reasonable step to "mitigate damages." The court fails to see the reasonableness in pursuing a case in state court which resulted in summary judgment in favor of defendants eight months before this case was filed. Such action was not useful and of a type ordinarily necessary to advance the limited rights successfully asserted in this case. Accordingly, the court reduces counsel Kevin Lafky's time by 29.3 hours, counsel Haley Percell's time by 2.1 hours, counsel Matt Mohill's time by 23.1 hours, paralegal Connie LaFarge's time by 1.5 hours, and legal assistant Emily Dougherty's time by 7.6 hours for a total reduction of $11,011.

2. State Court Retaliation Litigation

This case was disposed of on a motion to dismiss. Again it is not reasonable to include hours spent on these other proceedings in a fee award in this case as such action was not useful in advancing this case. Accordingly, 1.4 hours of counsel Larry Linder's time is excluded for a

reduction of $291.

3. TRO Motion in the Overtime Litigation and Effort to Get the Secretary of State to Intervene

Plaintiff again asserts such action was designed to mitigate damages, but it was not related to the limited success of this case. Accordingly, the court reduces counsel Kevin Lafky's time by 17.5 hours, counsel Matt Mohill's time by 77.3 hours, paralegal Connie LaFarge's time by 1.9 hours, legal assistant Emily Dougherty's time by .8 hours, and .8 hours of law clerk time for a total reduction of $15,889.

4. BOLI Complaint

The BOLI investigation helped frame the issues to be pleaded in the complaint. Accordingly, the court declines to reduce the hours spent on the BOLI proceedings.

5. Clerical Tasks

While costs directly related to plaintiff's case may be allowed as part of a fee award, costs associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable. See Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them") (citation omitted). Plaintiff seeks to shift both attorney and legal assistant time totaling 140.6 hours spent on tasks such as organizing files and transferring attorney time to invoices. Such hours are not reasonably included in the fee petition. Accordingly, the court reduces the requested fees by $12,797.

6. Time Spent on the Fee Petition

Plaintiff seeks $29,882.50 for time spent on the fee petition, or $19,350 after a reduction for

the excessive hourly rates noted above. Much of the work, of course, occurred after March 27, 2013. Even assuming the parties meant to include such fees in the offer of judgment, the court agrees that the amount sought in excess of $3,000 is unreasonable. Any complexity in developing the fee petition was necessitated by including far more claims than was reasonable in this case requiring the parties to engage in extensive motions practice to whittle the case down to reasonable claims. Moreover, much of the work should not have been performed at attorney rates. Accordingly, the court reduces the requested fees by $16,350.

7. Conference with Client Regarding Deposition Scheduling

After the parties agreed to have a settlement conference and with no intention to schedule depositions prior to the settlement conference, counsel Kevin Lafky billed 1.3 hours for time spent talking to his client regarding depositions. This was not reasonable especially since plaintiff accepted the offer of judgment before the scheduled settlement conference could occur. Accordingly, the fee petition is reduced by $292.

B. Cost Bill

Plaintiff seeks costs in the amount of $4,726.73. With the exception of the costs related to the BOLI case materials, the court agrees that the other costs objected to by defendant (costs related to the TRO and retaliation case; depositions of Frane, Stefan and Holmburg not reasonably necessary to the case) should be excluded. Accordingly, the costs bill is reduced to $2,258.83.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for attorneys' fees (#165) is allowed in the amount of $95,262, and plaintiff's cost bill (#165) is allowed in the amount of $2,258.83.

DATED this 25 day of October, 2013.

THOMAS M. COFFIN
United States Magistrate Judge